RENDERED: AUGUST 28, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000326-MR

JANTZEN KNIGHT BRICKEEN                         APPELLANT

             APPEAL FROM MCCRACKEN CIRCUIT COURT
v.            HONORABLE TIMOTHY J. KALTENBACH, JUDGE
                 ACTION NO. 18-CR-00027

COMMONWEALTH OF KENTUCKY                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND KRAMER, JUDGES.

ACREE, JUDGE: Jantzen Brickeen appeals the McCracken Circuit Court's

February 13, 2019 final judgment and sentence of imprisonment. He contends the

circuit court erred in three ways: (1) by refusing to strike a juror for cause; (2) by

refusing to grant a mistrial for prosecutorial misconduct; and (3) by instructing the

jury on a second-degree rape charge, which he argues was not decided unanimously. Finding no error, we affirm.

## BACKGROUND

On the evening of November 25, 2017, Ashley Daughtery went to a bar with her friend, Dustin Lassiter, in Paducah, Kentucky. She gave Lassiter her license and car keys because she did not have any pockets. However, she eventually got separated from Lassiter, who ultimately left her alone at the bar. Instead of leaving the establishment, she decided to stay and order another drink. At that time, she met Brickeen.

While drinking with Brickeen, Daughtery began feeling "kind of weird." Nevertheless, Brickeen convinced Daughtery to accompany him to a party at his friend's house. She agreed to leave, and they got in a cab together and left. After some time at the party, Daughtery asked if Brickeen had anything to "make [her] feel better." She followed him into the basement where he gave her a pill, later found to be a Xanax tablet. Daughtery testified she could not remember what happened next.

Around 2:00 a.m., two guests went to the basement and found Daughtery unconscious, lying on the floor, partially covered by a blanket. When the two guests tried to move her to a chair, they discovered she was not wearing any pants. Brickeen told the guests Daughtery was fine, so they left her alone.

-2-

When Daughtery regained consciousness she noticed she had a couple of scratches on the inside of her legs and some red marks or bruises on her neck. She also found Brickeen's phone that contained a partially nude photograph of her and a video of her and Brickeen engaging in sexual intercourse. Using her phone, she photographed the picture and recorded the video. She left the house and obtained a ride to Western Baptist Hospital. When she arrived at the hospital, she was tested for sexually transmitted infections and submitted to a rape kit. Charges were brought by the Commonwealth, indicting Brickeen for his conduct.

The jury eventually found Brickeen guilty of second-degree rape and third-degree trafficking in a controlled substance. He was sentenced to three months' imprisonment for trafficking and five years' imprisonment for second-degree rape, to run concurrently. This appeal followed.

## STANDARD OF REVIEW

We review a circuit court's decision not to strike jurors for cause and the denial of a mistrial under an abuse of discretion standard. *Sluss v. Commonwealth*, 450 S.W.3d 279, 282 (Ky. 2014); *Bray v. Commonwealth*, 68 S.W.3d 375, 383 (Ky. 2002). "When the question is whether a trial court erred by: (1) giving an instruction that was not supported by the evidence; or (2) not giving an instruction that was required by the evidence[,] the appropriate standard for

appellate review is whether the trial court abused its discretion." *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015).

**ANALYSIS**

Brickeen alleges the circuit court erred in three ways: (1) refusing to strike a juror for cause; (2) refusing to grant a mistrial for prosecutorial misconduct; and (3) instructing the jury on a second-degree rape charge. We take each issue in turn.

*Refusing to Strike a Juror for Cause*

During *voir dire*, the Commonwealth asked the venire members if there was any reason they could not serve on the jury. This prompted Juror 301 to approach the bench and inform the court that "when [she] was about twelve years old, [her] mom's boyfriend at the time would . . . sexually molest [her]." She also said she was "a little uncomfortable with the . . . concept of . . . rape . . . ." The circuit court then asked if she could impartially serve as a juror in this case. The following exchange took place:

> Court:     The question is, is whether or not you can judge the facts of this case based solely on what you hear in this courtroom during this trial, or whether that experience is going to, to taint the way you might judge the facts, whether, and when I say that, taint the way you're judging the facts fairly, and only you know that in your mind. So, you, you, you tell me whether or not that's going to affect the way you judge the facts of this case.

-4-

Juror 301:   I think I'll be able to do it fairly.

After this, Brickeen's counsel asked if it would affect her judgment if the victim in this case was helpless in the same way that she had been helpless. Juror 301 answered that she did not think her past was going to sway her opinion because her abuse was different from the facts of this case, considering that this case involved "date rape." Thereafter, the circuit court questioned her again regarding her impartiality. It asked:

> Court:     The question is, is whether or not you can fairly judge the facts of this case, or whether or not and, and, so, or whether or not the prior experiences is going to keep you from that, and that's really what . . . if you're comfortable then that's, I'm not, then . . . you're fine to sit. The question is, but if you have any doubt, then you need to let us know. That's–
>
> Juror 301:   You know, when, whenever he mentioned that there's going to be photography and videos, that kind of made me feel a little uncomfortable.
>
> Court:     All right, feeling uncomfortable is one thing. The question is, is, is whether or not your prior experience, if you see videos, is going to affect your ability to judge the facts fairly in this, in this case, or might affect your ability.
>
> Juror 301:   I think I'll be okay.

Brickeen's counsel attempted to strike Juror 301 for cause, but the circuit court would not allow it. Therefore, Brickeen's counsel was forced to use a preemptory strike against Juror 301. Brickeen now argues the circuit court erred by denying his attempt to strike Juror 301 for cause because she was a victim of sexual abuse. We disagree.

A juror should be struck for cause "[w]hen there is reasonable ground to believe [the] prospective juror cannot render a **fair and impartial** verdict on the evidence." RCr[1] 9.36(1) (emphasis added). "In ruling on a motion to strike a juror for cause, a judge must make a determination of the juror's ability to serve based on the entirety of his response." *Little v. Commonwealth*, 422 S.W.3d 238, 242 (Ky. 2013); *see also Shane v. Commonwealth*, 243 S.W.3d 336, 338 (Ky. 2007). Therefore, "the trial court possesses considerable discretion and its view of the juror's demeanor and apparent candor must be duly considered." *Moss v. Commonwealth*, 949 S.W.2d 579, 581 (Ky. 1997) (citation omitted).

Brickeen argues that Juror 301 was unable to sit on the jury because of her history with sexual assault. However,

> [t]his Court has consistently held that the mere fact that a juror or her family member has been the victim of a crime similar to the one charged against the defendant does not, in and of itself, justify that juror's excusal. *Brown v. Commonwealth*, 313 S.W.3d 577, 598 (Ky. 2010) (juror victim of burglary); *Richardson v. Commonwealth*, 161

---

[1] Kentucky Rules of Criminal Procedure.

S.W.3d 327, 330 (Ky. 2005) (juror victim of sexual abuse); *Woodall v. Commonwealth*, 63 S.W.3d 104, 118 (Ky. 2001) (juror sister of rape victim); *Hodge v. Commonwealth*, 17 S.W.3d 824 (Ky. 2000) (citing several earlier cases holding similarly).

*Little*, 422 S.W.3d at 242. In cases such as these, additional evidence of bias is required. *Id.* There must be "[o]bvious factors bearing on the likelihood of bias [such as] the similarity between the crimes, the length of time since the prospective juror's experience, and the degree of trauma the prospective juror suffered." *Brown*, 313 S.W.3d at 598. Ultimately, "[i]t is the totality of all the circumstances, however, and the prospective juror's responses that must inform the trial court's ruling." *Id.*

Given this standard, and the discretion awarded to the circuit court, we are satisfied that Juror 301 could be impartial, and the circuit court did not err by denying Brickeen's motion to strike for cause. The circuit court's colloquy with Juror 301 demonstrated that her personal tragedies would not affect her ability to render a fair and impartial verdict. Additionally, considerable time had passed since her abuse. *See Richardson*, 161 S.W.3d at 331 (no abuse of discretion occurred when trial court allowed a juror to remain on the panel in sexual abuse case despite the fact that the juror had been sexually abused fourteen years earlier).

We find no abuse of discretion in the circuit court's denial of Brickeen's motion to strike Juror 301 for cause.

*Prosecutorial Misconduct*

During closing argument, the prosecutor commented regarding what he interpreted as Brickeen's conflicting stories of what happened. After noting the differences, the prosecutor told the jury the defendant had "a little explaining to do." Brickeen immediately moved for a mistrial arguing the Commonwealth's closing included improper comments regarding Brickeen's right to remain silent. The circuit court denied the motion for a mistrial but, instead, admonished the jury. Brickeen believes this is insufficient and an error. Given our standard of review pertaining to mistrials, we disagree with Brickeen and conclude the circuit court did not err.

"A jury is presumed to follow an admonition to disregard evidence[,]" and an admonition is presumed sufficient to cure errors. *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003). The only two circumstances in which an admonition is deemed an insufficient curative measure are:

> (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition *and* there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant, or (2) when the question was asked without a factual basis *and* was inflammatory or highly prejudicial.

*Id.* (internal quotation marks and citations omitted). But this case does not satisfy the requirements of either exception.

The only exception that could reasonably pertain to the prosecutor's comment at closing is the first. It requires an overwhelming probability the jury would not follow the admonition *and* a strong likelihood it would be devastating to the defendant. Although this comment pushes the permissible/impermissible comment envelope, this Court is not convinced there is an overwhelming probability the jury would not follow the admonition. Given the presumption that an admonition cures errors, coupled with the colloquial nature of the saying – "you've got some explaining to do" – we find the jury would be able to follow the admonition. In short, we believe the circuit court's admonition was a sufficient curative measure, and not an abuse of discretion, rendering a mistrial unnecessary.

*Jury Instruction*

Lastly, Brickeen argues the circuit court erred by instructing the jury on second-degree rape. The Commonwealth believes this Court is unable to review this issue due to lack of preservation under RCr 9.54. We disagree. Our predecessor Court previously held, "although it is not necessary to raise objection to the instructions at the time they are given, it is imperative that claimed errors in instructions, given or omitted, be presented to the trial court at some time, either by proper objection or by motion, and certainly no later than the motion for a new trial, before they may receive appellate review." *Hartsock v. Commonwealth*, 382 S.W.2d 861, 864 (Ky. 1964). The Court held an objection must be presented to the

trial court "at some time[.]" *Id.* Therefore, we find that Brickeen preserved his argument by filing a motion in the circuit court, prior to appealing. We now move to Brickeen's substantive argument.

After the conclusion of proof, the circuit court instructed the jury on first-degree and second-degree rape. Brickeen argues that while a trial court must instruct a jury on the whole law of the case, the Commonwealth never proved an essential element of second-degree rape. Therefore, it should not have given that instruction because it was not supported by evidence.

KRS[2] 510.050 identifies the elements of second-degree rape. For the purposes of this case, a person is guilty of second-degree rape when: "He or she engages in sexual intercourse with another person who is mentally incapacitated . . . ." KRS 510.050(1)(b). Mental incapacity is defined by KRS 510.010(5) as a person "rendered temporarily incapable of appraising or controlling his conduct as a result of the influence of an intoxicating substance administered to him without his consent or as a result of any other act committed upon him without his consent[.]" Given these definitions, Brickeen argues that because Daughtery took the Xanax pill of her own accord, she was not mentally incapacitated and, therefore, he did not commit second-degree rape.

---

[2] Kentucky Revised Statutes.

We understand Brickeen's argument. However, the Commonwealth provided testimony that Daughtery believed she was drugged *at the bar*, before she took the Xanax pill.

Daughtery testified that: (1) she felt "like the lights were messing with [her] eyes"; (2) her "body was really heavy"; and (3) "everything sounded echo-y." She also testified to telling Brickeen she thought she was drugged. Our Supreme Court recognized in *Commonwealth v. Gross* that direct proof of a crime is not necessary. 428 S.W.3d 619, 625 (Ky. 2014). "It has long been the law that the Commonwealth can prove all the elements of a crime by circumstantial evidence." *Id.* (citation omitted). Circumstantial evidence is "sufficient to support a criminal conviction as long as the evidence taken as a whole shows that it was not clearly unreasonable for the jury to find guilt." *Bussell v. Commonwealth*, 882 S.W.2d 111, 114 (Ky. 1994) (citations omitted). Given this, we find the circuit court did not err by instructing the jury on second-degree rape.

Brickeen briefly suggests the instruction violated his right to a unanimous verdict. He only states, "[a]s the Commonwealth argued in its Response, 'there are multiple ways the jury could have arrived at a conviction of second degree rape.'" (Appellant's Brief p. 20.) Even though the Commonwealth mentioned various ways Daughtery could have become incapacitated, the law does not require Brickeen to be the one who incapacitated Daughtery. It only requires

-11-

proof that he had sexual intercourse with the victim while she was incapacitated. *See* KRS 510.050(1)(b).

Recently, our Supreme Court held that the existence of multiple ways of finding guilt does not render a jury instruction invalid. *Cox v. Commonwealth*, 553 S.W.3d 808, 812-13 (Ky. 2018). It stated, "a disagreement about means— would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element[.]" *Id.* at 813. In reliance on *Cox*, we hold that regardless of who potentially drugged Daughtery, or when Daughtery was drugged, the jury just needed to conclude Brickeen had sexual intercourse with Daughtery while she was incapacitated. We find no error in the circuit court's jury instructions.

## **CONCLUSION**

For the foregoing reasons, we affirm the McCracken Circuit Court's February 13, 2019 final judgement and sentence of imprisonment.

ALL CONCUR.

BRIEF FOR APPELLANT:       BRIEF FOR APPELLEE:

Jeremy Ian Smith           Andy Beshear
Paducah, Kentucky         Attorney General of Kentucky

                                    Christopher Henry
                                    Assistant Attorney General
                                    Frankfort, Kentucky