RENDERED: JANUARY 6, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1620-MR

BRADLEY WILLIAMS                      APPELLANT

v.             APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE KELLY M. EASTON, JUDGE
ACTION NO. 20-CR-00231

COMMONWEALTH OF KENTUCKY             APPELLEE

## OPINION
### AFFIRMING IN PART, VACATING IN PART, AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, MCNEILL, AND TAYLOR, JUDGES.

MCNEILL, JUDGE: Bradley Williams ("Williams") appeals from the final judgment of the Hardin Circuit Court sentencing him to fifteen years' imprisonment. At trial, Williams was convicted of second-degree assault, second-degree strangulation, first-degree unlawful imprisonment (two counts), second-degree disorderly conduct, alcohol intoxication in a public place, resisting arrest, fourth-degree assault, and being a first-degree persistent felony offender. After our

review, we vacate the portion of the judgment imposing jail fees and affirm the remainder of the judgment.

On the evening of January 12, 2020, Williams and his girlfriend, Elizabeth Lewis ("Lewis"), were sitting at her apartment watching football and drinking alcohol when an altercation ensued between them over Lewis' cell phone. Williams pushed Lewis onto the stairs, banged her head into the steps, and began choking and hitting her. When Williams stopped assaulting Lewis to check on a pizza they were cooking, Lewis grabbed her son and ran outside to find help.

Williams followed Lewis outside, seized her by the hair, and dragged her back to the apartment. A neighbor heard Lewis screaming and called the police. Back inside the apartment, Williams continued assaulting Lewis. The police arrived and arrested Williams, and Lewis was taken to the hospital. Williams was charged with first-degree strangulation, second-degree disorderly conduct, public intoxication, resisting arrest, second-degree assault, first-degree unlawful imprisonment (two counts), fourth-degree assault, and being a first-degree persistent felony offender.

At trial, Williams admitted to all the allegations except strangulation. Following the evidence, the jury convicted Williams on all charges and the trial court sentenced him to fifteen years' imprisonment. This appeal followed.

Williams first argues he is entitled to a new trial based upon Juror 406's failure to disclose her acquaintance with the prosecutor,[1] citing *Gullett v. Commonwealth*, 514 S.W.3d 518 (Ky. 2017). During *voir dire*, the trial court questioned the jury panel about their potential familiarity with either of the parties: "Do any of you know them, on some way that is not just acquaintance, you know this person in some way that might influence how you would listen to a case they are involved in. Anybody know these six people?" The prosecutor followed up with a similar question: "The folks that were not with us last week and were [sic] able to hear these questions, do any of you all think that you know me, on some personal level, or professionally, either from when I was in private practice or now that I am a prosecutor?"

Juror 406 did not answer either of the questions. On day two of the trial, defense counsel learned that Juror 406 knew the prosecutor through her job as secretary at the school the prosecutor's children attended. Juror 406 had served on a jury the prior week and disclosed this information and another defense attorney had used a preemptory strike to remove her. Based upon this knowledge, Williams' attorney asked the trial court to make Juror 406 an alternate. The trial

---

[1] We note that, technically, Williams never moved for a new trial, but instead requested the trial court to use Juror 406 as an alternate, effectively striking her for cause. However, because the trial court essentially conducted a juror mendacity analysis, we consider this argument preserved for appellate review.

court denied the motion, finding there was no evidence Juror 406 should have been stricken for cause or answered untruthfully any question asked by the judge or the parties.

"To obtain a new trial because of juror mendacity, 'a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause.'" *Adkins v. Commonwealth*, 96 S.W.3d 779, 796 (Ky. 2003) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S. Ct. 845, 850, 78 L. Ed. 2d 663 (1984)). Here, Williams cannot show that Juror 406 failed to honestly answer any question posed during *voir dire*. The trial court asked the jurors if anyone knew the prosecutor in a way "that might influence how you would listen to a case they are involved in." The question specifically excluded relationships based upon mere acquaintance. There is no evidence that Juror 406's relationship with the prosecutor was anything more than an acquaintance, or any evidence that Juror 406 could not be impartial.

Similarly, the prosecutor's question – if anyone knew her either personally or professionally – was limited to jurors who had not served the previous week. Juror 406 had heard and answered truthfully that question the week before. Therefore, her failure to answer the prosecutor's question during *voir dire* in this case is not evidence of juror mendacity.

Williams' reliance upon *Gullett*, *supra*, is misplaced. In that case, our Supreme Court determined the challenged juror had been deliberately deceptive in failing to disclose the criminal prosecutions of her family members. The juror had been asked no less than four times – by the trial judge directly, by the prosecutor, by the defense attorney, and on the juror qualification form – whether a family member had been involved in a criminal prosecution and had remained silent. The questions were clear, and her silence was dishonest. Here, there is no evidence of deliberate deception. Juror 406's silence was an honest response to the prosecutor's and trial court's actual questions.

It is worth noting that Williams himself failed to ask any questions during *voir dire* which might have led to the disclosure of Juror 406's acquaintance with the prosecutor or seek clarification from jurors concerning their responses to the trial court and prosecutor's narrowly tailored questions. "Appellant himself bears the primary responsibility to ask the proper question on *voir dire* examination and a failure to so inquire will generally preclude relief." *Moss v. Commonwealth*, 949 S.W.2d 579, 581 (Ky. 1997). Further, our Supreme Court has rejected the argument that an appellant would have used his preemptory strikes to exclude a juror based on after-acquired evidence under similar facts. *See id*. ("If we allowed such a practice, after-acquired information could always be used in

post-trial assertions that a particular juror would have been excused had the undisclosed information been known.").

Williams next argues that the prosecutor elicited improper class habit and bolstering testimony from a police officer and a Sexual Assault Nurse Examiner (abbreviated SANE and informally referred to as a SANE nurse). However, this argument was never presented to the trial court and is thus not properly preserved for our review. As summarized by our Supreme Court in *Norton Healthcare, Inc. v. Deng*, 487 S.W.3d 846 (Ky. 2016):

> We have long endorsed a rule that "specific grounds not raised before the trial court, but raised for the first time on appeal will not support a favorable ruling on appeal." When a trial court never has the opportunity to rule on a legal question presented to an appellate court, an appellant presents a different case to the appellate court than the one decided by the trial court. Indeed, an appellate court is "without authority to review issues not raised in or decided by the trial court." The proper role for an appellate court is to review for error – and there can be no error when the issue has not been presented to the trial court for decision.

*Id.* at 852 (citations omitted).

During the Commonwealth's case-in-chief, the prosecutor asked both the SANE nurse and a police officer about Lewis' inconsistent statements concerning whether she was strangled with one or two hands. Both the officer and SANE nurse testified that inconsistent statements were not uncommon when recounting a traumatic event. Williams objected on the basis that this testimony

was outside of the SANE nurse's expertise,[2] not that this testimony was improper habit evidence or bolstering. Therefore, we will not address these arguments.

For his third assignment of error, Williams argues the prosecutor committed a *Moss* violation by asking him whether another witness was lying. During cross-examination, the prosecutor questioned Williams about a witness' account of the assault:

> Commonwealth: Your testimony is that Mr. Perkins is, I guess, lying when he describes this as an event from [World Wrestling Entertainment]?
>
> Williams: Yes, ma'am.
>
> Commonwealth: Did you ever meet this man before?
>
> Williams: No.
>
> Commonwealth: You didn't see him that night?
>
> Williams: No.
>
> Commonwealth: And he's just an average Hardin County citizen and he's just gonna come in here and lie on you? That's your testimony?
>
> Williams: I don't know ma'am.

Williams concedes that this issue is not preserved for appeal and requests that this Court review for palpable error under RCr[3] 10.26. The

---

[2] Williams did not object to the officer's similar testimony.

[3] Kentucky Rules of Criminal Procedure.

Commonwealth responds that, even if the questions were improper, they did not amount to palpable error. We agree. "In order to demonstrate an error rises to the level of a palpable error, the party claiming palpable error must show a probability of a different result or [an] error so fundamental as to threaten a defendant's entitlement to due process of law." *Allen v. Commonwealth*, 286 S.W.3d 221, 226 (Ky. 2009) (internal quotation marks and citation omitted).

Williams contends that the prosecutor's questions prejudiced the jury into disbelieving his testimony that he did not strangle Lewis. Essentially, he argues that because his defense to the strangulation charge turned on his credibility, painting him as a liar undermined his entire testimony and resulted in manifest injustice. While Williams is correct that it is generally improper for a witness to be required to characterize another witness' testimony as lying, *Moss*, 949 S.W.2d at 583, our Supreme Court "has never found a *Moss* violation to rise to palpable error under RCr 10.26[.]" *Parker v. Commonwealth*, 482 S.W.3d 394, 406 (Ky. 2016) (citing *Luna v. Commonwealth*, 460 S.W.3d 851 (Ky. 2015)). We similarly find no palpable error in this case. Contrary to Williams' assertions, there was substantial evidence supporting the strangulation charge from Lewis and the SANE nurse's testimony concerning Lewis' injuries. Williams' failure to object precludes relief.

Williams next argues the trial court erred in imposing jail fees without evidence Hardin County had a jail fee reimbursement policy, citing two unpublished Kentucky cases, *Melton v. Commonwealth*, No. 2016-SC-000552-MR, 2018 WL 898307 (Ky. Feb. 15, 2018), and *Jackson v. Commonwealth*, No. 2018-CA-000543-MR, 2019 WL 2246172 (Ky. App. May 24, 2019).[4]  He acknowledges this error is unpreserved.  "Nonetheless, since sentencing is jurisdictional it cannot be waived by failure to object.  Thus, sentencing issues may be raised for the first time on appeal[.]"  *Travis v. Commonwealth*, 327 S.W.3d 456, 459 (Ky. 2010) (internal quotation marks and citations omitted).  Williams requests palpable error review.

We agree the trial court erred in imposing jail fees based upon our Supreme Court's recent holding in *Capstraw v. Commonwealth*, 641 S.W.3d 148 (Ky. 2022).  In *Capstraw*, a case which, coincidentally, also originated in Hardin Circuit Court, the Court reiterated "that in order to impose jail fees against a criminal defendant during sentencing, there must be some evidence presented that a jail fee reimbursement policy has been adopted by the county jailer with approval of the county's governing body in accordance with [Kentucky Revised Statute] KRS 441.265(2)(a)."  *Id.* at 161-62.  Here, there is no evidence of record that

---

[4] Additionally, Williams argues the imposition of jail fees was error because the trial court found him indigent.  Because we vacate the fees on other grounds, this argument is moot.

Hardin County had adopted a jail fee reimbursement policy pursuant to statute. Therefore, we vacate the $50 in jail fees.

Finally, Williams argues that his conviction should be reversed because of cumulative error. We disagree. Cumulative error is "the doctrine under which multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). Here, the only error we recognized at trial was the unpreserved *Moss* issue which did not rise to the level of prejudice required to find palpable error. "Where . . . none of the errors individually raised any real question of prejudice, we have declined to hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice." *Id.* (citation omitted).

For the foregoing reasons, we vacate that portion of the Hardin Circuit Court's judgment imposing jail fees. We affirm the remainder of the judgment and remand for entry of a new judgment consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Robert C. Yang
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky